USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/30/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Trustees of the Drywall Tapers and Pointers Local Union No. 1974 Benefit Funds, et al.,

        Plaintiffs,

—v—

Plus K Construction Inc.,

        Defendant.

20-cv-1643 (AJN)

MEMORANDUM OPINION & ORDER

ALISON J. NATHAN, District Judge:

       This is an action brought pursuant to the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et. seq. ("ERISA"), and the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). Plaintiffs Trustees of the Drywall Tapers and Pointers Local Union No. 1974 Benefit Funds and The District Council No. 9, Drywall Tapers and Pointers of Greater New York Local Union 1974 Affiliated with International Union of Painters and Allied Trades, AFL-CIO ("Plaintiffs") initiated this lawsuit against Defendant Plus K Construction Inc. to recover contributions owed under the parties' trade agreement. Plaintiffs now move for default judgment against Plus K Construction Inc. For the reasons that follow, Plaintiffs' motion for default judgment is GRANTED.

    **I.    BACKGROUND**

       The following facts are taken from the Complaint and deemed true for purposes of resolving this motion. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("[A] default is an admission of all well-pleaded allegations against the defaulting party.").

The Plaintiffs in this case are the Trustees of the Drywall Tapers and Pointers Local Union No. 1974 Benefit Funds (hereinafter referred to as the "Trustees") and the District Council No. 9, Drywall Tapers and Pointers of Greater New York Local Union 1974, Affiliated with International Union of Painters and Allied Trades AFL-CIO (hereinafter referred to as the "Union"). The Trustees bring this case in their capacity as fiduciaries of the Drywall Tapers and Pointers Local Union No. 1974 Benefit Funds, which are jointly administered multiemployer, labor management trust funds under the meaning of the Employee Retirement Income Security Act ("ERISA"). *See* Dkt. No. 1 ("Compl.") ¶¶ 5–6. The Union, meanwhile, is a labor organization within the meaning of Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185, and it represents employees in an industry affecting commerce as defined in Section 501 of the Taft-Hartley Act, 29 U.S.C. § 142, and Section 3(4) of ERISA, 29 U.S.C. § 1002(4), and as defined in Section 12 of the General Associations Law of the State of New York. *Id.* ¶ 8. Together, they bring this action against Defendant Plus K Construction Inc. (hereinafter referred to as "Plus K Construction"), which is an "employer" within the meaning of sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5) and 1145, and is an employer in an industry affecting commerce within the meaning of Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185.

Plus K Construction executed a labor agreement with the Union and is still a party to that agreement. Compl. ¶ 12. Under the terms of the agreement, Plus K Construction is obligated to submit contribution reports that set forth the hours that each of its employees worked and the amount of contributions due pursuant to the rate schedules set forth in the Agreement for all work performed by its employees covered by the Agreement. *Id.* ¶ 13. It also must remit such monetary contributions in accordance with the Agreement and the rules and regulations

established in the Trust Indenture and in the Policy for the Collection of Delinquent Contributions.  *Id.*; *see also* Dkt. No. 15, Ex. A at Art. XX; Dkt. No. 15, Ex. B § 5.

As a result of work performed by Plus K Construction's employees, the company owes the Funds contribution reports and fringe benefit contributions, as set forth in the parties' agreement.  Compl. ¶ 14.  To date, however, Plus K Construction has failed to remit to the Funds the fringe benefit contributions it owes under the agreement for the period stemming from September 23, 2016 through September 30, 2018.  *Id.* ¶ 15–16.

Plaintiffs initiated this lawsuit on February 25, 2020.  *See* Dkt. No. 1.  Plaintiffs filed an affidavit of service of the summons and the Complaint on March 2, 2020.  Dkt. No. 6.  Plus K Construction never noticed an appearance, and on April 27, 2020, Plaintiffs requested a certificate of default against Plus K Construction, which the Court issued on April 28, 2020.  *See* Dkt. Nos. 10–12.  Plaintiffs then moved for a default judgment on April 29, 2020, Dkt. No. 13, and on May 27, 2020 filed a certificate of service setting forth that Plaintiffs had served their proposed default judgment, along with the supporting documents, by mail at Plus K Construction's last known address, *see* Dkt. No. 18.

## II.    JURISDICTION

This Court has subject matter jurisdiction under Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, and under Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185.  Under 29 U.S.C. § 1132(a)(3), "a civil action may be brought . . . by a participant, beneficiary, or fiduciary" of an ERISA plan.  29 U.S.C. § 1132(a)(3).  The Second Circuit has taken a strict view of which entities can sue under ERISA.  *See Pressroom Unions– Printers League Income Sec. Fund v. Cont'l Assur. Co.,* 700 F.2d 889, 891–93 (2d Cir.1983) (finding that 29 U.S.C. § 1132(a)(3) exclusively enumerates which plaintiffs may bring suit

under ERISA—namely, a "participant, beneficiary, or fiduciary"); *see also E. States Health & Welfare Fund v. Philip Morris, Inc.,* 11 F.Supp.2d 384, 401 (S.D.N.Y.1998) ("The Second Circuit has taken a very strict view of who has standing to bring suits under § 502, refusing to extend standing beyond the plaintiffs specifically named in ERISA.").

Here, the Trustees bring this suit in their capacity as fiduciaries of the Funds, which confers upon this Court subject matter jurisdiction over the Trustees' ERISA claim. *See* Compl. ¶ 4; *see also Trustees of Drywall Tapers & Pointers of Greater New York Local Union 1974 Benefit Funds v. Cite C. Corp.*, No. 17-CV-09304 (VSB) (SDA), 2018 WL 8545834, at *1 (S.D.N.Y. Nov. 6, 2018), *report and recommendation adopted sub nom. Trustees of Drywall Tapers & Pointers Local Union No. 1974 Benefit Funds v. Cite C Corp.*, No. 17-CV-9304 (VSB), 2019 WL 1745743 (S.D.N.Y. Apr. 18, 2019) (determining that the Trustees were suing in their fiduciary capacity and recommending that judgment be entered in favor of the Trustees in a similar ERISA suit); *Trustees of Drywall Tapers & Pointers Local Union No. 1974 Benefit Funds v. Mill & Mill Constr. Inc.*, No. 17-CV-04467 (LAK) (KHP), 2017 WL 11570476, at *1 (S.D.N.Y. Nov. 22, 2017) (same); *Trustees of Drywall Tapers & Pointers Local Union No. 1974 Benefit Fund v. Odessy Constr. Corp.*, No. 16-CV-00622 (GBD) (SN), 2016 WL 3365323, at *1 (S.D.N.Y. May 18, 2016), *report and recommendation adopted sub nom. Trustees of the Drywall Tapers v. Odessy Constr. Grp.*, No. 16-CV-00622 (GBD) (SN), 2016 WL 3407855 (S.D.N.Y. June 16, 2016) (same).

"Unlike ERISA, the LMRA does not limit parties who may bring suit so long as the object of the suit is the enforcement of rights guaranteed by an agreement between an employer and a labor organization." *Teamsters Health & Welfare Fund of Philadelphia & Vicinity v. H.P. Kanady, Inc.*, No. CIV.A. 12-1470, 2012 WL 3185952, at *2 (D.N.J. Aug. 2, 2012) (citation

omitted). Because the LMRA covers all claims made by the Plaintiffs in this litigation, the Court has subject matter jurisdiction and may enter judgment as to all plaintiffs on any claims stemming from the LMRA.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets out a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Mickalis Pawn Shop*, 645 F.3d at 128. Rule 54(c), meanwhile, states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Whether entry of default judgment at the second step is appropriate depends upon whether the allegations against the defaulting party are well-pleaded. *See Mickalis Pawn Shop*, 645 F.3d at 137. A default constitutes an admission of all well-pleaded factual allegations in the complaint. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992). But because a party in default does not admit conclusions of law, a district court must determine whether the plaintiff's allegations are sufficient to establish the defendant's

liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The legal sufficiency of these claims is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor. *Belizaire v. RAV Investigative and Sec. Servs., Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014); *see also WowWee Grp. Ltd. v. Meirly*, No. 18-CV-706 (AJN), 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019).

### IV. DISCUSSION

#### A. Liability

Plaintiffs allege that Plus K Construction is liable under sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145, and section 301 of the Labor–Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 185.

Under 29 U.S.C. § 1145, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. "An ERISA 'employer' is defined as 'any person acting directly as an employer, or indirectly in the interest of an employer in relation to an employee benefit plan.'" *Broach v. Metro. Exposition Servs., Inc.*, No. 20-CV-0165 (LJL), 2020 WL 3892509, at *6 (S.D.N.Y. July 10, 2020) (citing 29 U.S.C. § 1002(5)). When an employer has violated its obligation to make contributions under 29 U.S.C. § 1145 a judgment may be entered against that employer in the amount of delinquent contributions, plus interest and liquidated damages as prescribed by the governing documents.

*See* 29 U.S.C. § 1132(g)(2).  *See also Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Duncan Partners, LLC*, No. 19-CV-8120 (RA), 2020 WL 4208368, at *3 (S.D.N.Y. July 22, 2020).

Plaintiffs have alleged all required elements to establish liability under 29 U.S.C. § 1145. First, Plaintiffs have sufficiently pleaded that Plus K Construction is an employer under the terms of the statute.  Compl. ¶ 10; *see also* Dkt. No. 15 ¶ 4.  Second, Plaintiffs have established that the Drywall Tapers and Pointers Local Union No. 1974 Benefit Funds are multiemployer plans, as defined by ERISA.  Compl. ¶ 2.  Furthermore, Plaintiffs have sufficiently pleaded that Plus K Construction and the Union entered into a collective bargaining agreement, as defined by the statute.  *See* Compl. ¶¶ 12–13.  And Plaintiffs have also established that, under the terms of the agreements, Plus K Construction is required to, among other things, remit to the Plaintiffs' Funds benefit contributions and reports.  Compl. ¶¶ 13–14; *see also* Dkt. No. 15, Ex. A. Furthermore, Plaintiffs' pleadings suffice to establish that Plus K Construction has not made the required payments.  *See, e.g.*, Compl. ¶¶ 15–18.  Altogether, therefore, Plaintiffs have established that Plus K Construction was "obligated to make contributions" as an "employer" to the Funds in accordance with the Trade Agreement, and that it has failed to do so.  *See Broach*, 2020 WL 3892509, at *6.

The same reasoning directs the Court's finding that the Plaintiffs have established liability under Section 301 of the LMRA, 29 U.S.C. § 185, for failing to remit contributions under the terms of the Agreements.  "Under Section 301 of the LMRA, an employer may be held liable for failing to remit dues or contributions to a labor organization as required under the terms of a CBA."  *Trustees of Sheet Metal Workers' Local Union No. 28 Funds & Plans v. Air Wise*

*Heating & Cooling, Inc.*, No. 18-CV-11569 (JGK) (GWG), 2020 WL 2846693, at *2 (S.D.N.Y. June 2, 2020), *report and recommendation adopted*, No. 18-CV-11569 (JGK), 2020 WL 3440503 (S.D.N.Y. June 23, 2020) (citation omitted). Under the terms of the Agreement, Plus K Construction was required to make contributions to the funds, and it failed to do so. *See, e.g.*, Compl. ¶¶ 13–15, 33. Because this allegation establishes breach of the Agreement, it also establishes liability under Section 301 of the LMRA. *See, e.g.*, *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582 (NGG) (LB), 2011 WL 5401987, at *3 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted*, No. 10-CV-3582 (NGG) (LB), 2011 WL 5402898 (E.D.N.Y. Nov. 4, 2011) ("Under Section 301 of the LMRA, an employer may be held liable for failing to pay assessments or failing to remit dues withheld from employee paychecks to the union as required by a collective bargaining agreement.").

While Plaintiffs also assert a cause of action for common law breach of contract, *see* Compl. ¶¶ 12–20, they have not provided any legal authority as to why these claims are not preempted by ERISA and the LMRA. First, ERISA provides for an exclusive civil enforcement scheme. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 43, 47–48, 56–57 (1987); *Plumbing Indus. Bd., Plumbing Local Union No. 1 v. L & L Masons, Inc.,* 927 F. Supp. 645, 649 (S.D.N.Y. 1996) ("In general, a party may not enforce an obligation that arises under ERISA through imposition of a common law contract claim, for such a common law claim 'relates to' an employee benefit plan." (citing *Pilot Life.* 481 U.S. at 47–48)). *See also Trustees of Sheet Metal Workers' Int'l Ass'n Local Union No. 28 Ben. Funds v. J. & A. Contractors Corp.*, No. 14-CV-4935 (KBF), 2014 WL 4733504, at *2 (S.D.N.Y. Sept. 4, 2014). Furthermore, the LMRA "preempts any state-law claim [whose resolution] is substantially dependent upon the analysis of the terms of an agreement made between the parties in a labor contract," and its "scope of

preemption is so broad that it displace[s] entirely any state cause of action for violation of contracts between an employer and a labor organization." *Mason Tenders Dist. Council Welfare Fund v. Logic Const. Corp.*, 7 F. Supp. 2d 351, 359 (S.D.N.Y. 1998) (citation and internal quotation marks omitted).  And "cases in which a plaintiff alleges that defendant violated the CBA itself" fall into the kinds of claims that "have been preempted under § 301." *Kaye v. Orange Reg'l Med. Ctr.*, 975 F. Supp. 2d 412, 423 (S.D.N.Y. 2013).  *See also Pilot Life Ins. Co.*, 481 U.S. at 55 ("Congress was well aware that the powerful pre-emptive force of § 301 of the LMRA displaced all state actions for violation of contracts between an employer and a labor organization, even when the state action purported to authorize a remedy unavailable under the federal provision."); *Ellis v. HarperCollins Publishers, Inc.,* No. 99–CV–12123, 2000 WL 802900, at *2 (S.D.N.Y. June 21, 2000) ("Because the reported violation [of state law] is based on a failure to pay union employees *in accordance with the terms of a CBA*, however, this violation is preempted by Section 301 of the [LMRA]." (emphasis added)).  In light of Plaintiffs' failure to provide any authority to the contrary, the Court concludes that Plaintiffs are not entitled to default judgment as to their common law claims.  But having considered all relevant factors, the Court concludes that Plaintiffs' well-pleaded allegations are sufficient to establish liability against Plus K Construction under both ERISA and the LMRA.

### B. Damages

"Once liability is established, the sole remaining issue before the court is whether the plaintiff has provided adequate support for the relief it seeks." *Bleecker v. Zetian Sys., Inc.*, No. 12-cv-2151 (DLC) (SN), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)).  "Even when a default judgment is warranted based on a party's failure to

defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). "Establishing the appropriate amount of damages involves two steps: (1) 'determining the proper rule for calculating damages on . . . a claim'; and (2) 'assessing plaintiff's evidence supporting the damages to be determined under this rule.'" *Begum v. Ariba Disc., Inc.*, No. 12-cv-6620 (DLC) (KNF), 2015 WL 223780, at *4 (S.D.N.Y. Jan. 16, 2015) (alteration in original) (quoting *Credit Lyonnais*, 183 F.3d at 155). In this analysis, the burden is on the plaintiff to establish its entitlement to recovery. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992).

Damages for violating Section 1145 are assessed under Section 1132(g)(2), which provides that:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan: (a) the unpaid contributions; (b) interest on the unpaid contributions; (c) an amount equal to the greater of —(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the [unpaid contributions]; (d) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (e) such other legal or equitable relief as the court deems appropriate. For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan[.]

29 U.S.C. § 1132(g)(2).

The Plaintiffs seek $4,533.78 in principal unpaid fringe benefit contributions for the period stemming from September 23, 2016 through September 30, 2018. Dkt. No. 15 ¶ 24. They also seek $59.50 in interest on that amount through December 31, 2018, and an additional $906.76 in liquidated damages. *Id.* Furthermore, they seek restitution for the imputed cost of the

Audit, which they indicate amounts to $700. *Id.* They also seek attorneys' fees in the amount of $3,225 and court costs and disbursements in the amount of $470. *Id.*

The Court concludes that Plaintiffs have established their claim to $4,533.78 in principal unpaid fringe benefit contributions for the period stemming from September 23, 2016 through September 30, 2018. The Court acknowledges that Plaintiffs' supporting documents and evidence at times use inconsistent language. For instance, in the Complaint and in the Affirmation submitted in support of the motion for default judgment, Plaintiffs establish—and the Court has granted default judgment as to liability on—the period stemming from September 23, 2016 through September 30, 2018. *See* Compl. ¶ 15; Dkt. No. 15 ¶ 15–16. The proposed default judgment also notes that that amount covers the period stemming from September 23, 2016 through September 30, 2018. *See* Dkt. No. 14. But in their statement of damages, they claim that the $4,533.78 amount represents the "[p]rincipal [a]mount [d]ue for the period of July 1, 2015 through June 30, 2018." Dkt. No. 16. The next page is named "Summary of Delinquent Contributions For the period January 1, 2011 through December 31, 2014," and it includes the same $4,533.78 amount. Dkt. No. 15, Ex. E at 2. Notwithstanding these inconsistencies, the Court concludes that the supporting evidence as a whole supports Plaintiffs' claim for the requested amount. The cover letter in the Audit Report submitted in support of their motion for default judgment lists $4,533.78 as representing the contributions owed for the period stemming from September 23, 2016 through September 30, 2018, *see* Dkt. No. 15, Ex. E at 1. Moreover, the audit report itself sets that date range as the audit period and lists $4,533.78 as the "[t]otal [d]efficiency." *See* Dkt. No. 15, Ex. E at 5–6. Courts have determined that audit reports represent sufficient proof of the amount owed in unpaid fringe benefit contributions. *See, e.g.*, *New York City Dist. Council of Carpenters v. Rock–It Contracting,* No. 09-CV-9479 (JGK)

(AJP), 2010 WL 1140720, at *2 (S.D.N.Y. Mar. 26, 2010), *report and recommendation adopted*, No. 09-CV-9479 (JGK), 2010 WL 1558568 (S.D.N.Y. Apr. 19, 2010) ("[T]he Funds have provided sufficient proof, in the form of audit reports, of the principal amount of unpaid fringe benefit contributions . . . . The Funds should be awarded that amount."). Because Plus K Construction has neither appeared in the case nor "introduced any evidence that would suggest that these findings are inaccurate," *Trustees of Sheet Metal Workers' Local Union No. 28 Funds & Plans*, 2020 WL 2846693, at *2–3, the Court finds this to be sufficient, notwithstanding the marginally inconsistent language elsewhere in Plaintiffs' supporting documentation. The Court thus concludes that Plus K Construction to be liable for $4,533.78 in principal unpaid fringe benefit contributions for the period stemming from September 23, 2016 through September 30, 2018.

The Plaintiffs also seek interest on the unpaid contributions. ERISA provides that following a successful action to recover unpaid contributions due under a plan, "the court shall award the plan . . . interest on the unpaid contributions," and that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). *See also Broach v. Metro. Exposition Servs., Inc.*, No. 20-CV-0165 (LJL), 2020 WL 3892509, at *7 (S.D.N.Y. July 10, 2020). In the ERISA context, interest should be calculated from the date a missed payment first became due. *See Mason Tenders Dist. Council Welfare Fund v. Mackroyce Const. Corp.*, No. 96-CV-4693 (SAS), 1998 WL 193075 (S .D.N.Y. Apr. 22, 1998) (internal citations omitted). The Trade Agreement, to which Plus K Construction is bound, provides that "the Employer will be bound in all respects by the rules and/or regulations established by the Trustees relating to Employer contributions to the Trust Fund, including rules for resolving any disputes concerning

Employer payments or reports to the Trustees." Dkt. No. 15, Ex. A at Art. XX; *see also* Dkt. No. 15 ¶¶ 5–6 & Ex. C.  And here, the Funds' Collection Policy provides for a 5.25% interest rate. *See* Dkt. No. 15, Ex. B § 5.  As a result, the Plaintiffs have put forth sufficient evidence that they are entitled to a 5.25% *per annum* interest rate.  The Court thus concludes that they are entitled to $59.50 in pre-judgment interest through December 31, 2018, and that they are further entitled to pre-judgment interest at a rate of 5.25% per year through the date of the entry of judgment.

Next, the Court concludes that Plaintiffs' inconsistencies regarding their entitlement to liquidated damages are too significant to determine the appropriate damages amount at this time. While in their proposed default judgment, Plaintiffs proffer that they are entitled to "liquidated damages calculated at 10% of the principal amount," their proposed amount—$906.76—is actually 20% of the principal amount.  They also mention that liquidated damages are calculated at 10% of the principal amount in their affirmation submitted in support of their summary judgment motion.  *See* Dkt. No. 15 ¶ 14.  On the other hand, the Audit Report's cover letter also indicates that the liquidated damages amount to 20%.  *See* Dkt. No. 15, Ex. E at 1.  The Agreement contemplates that liquidated damages for a delinquency of over 10 weeks is imposed at a rate of 30% (which would be capped at 20%, per ERISA), but the Collection Policy states that "the Board may assess liquidated damages at the rate of ten (10%) percent of the principal amount due."  Dkt. No. 15, Ex. B § 5.  In light of these inconsistencies, the Court cannot discern with reasonable certainty the amount of liquidated damages due.  Plaintiffs may file a supplemental affidavit indicating exactly how much they are entitled to in liquidated damages by April 15, 2021.

The Court agrees with Plaintiffs that they are entitled to recover the $700 cost of the Audit.  Courts in this Circuit routinely grant such audit costs if such costs are provided for in the

Agreement.  *See, e.g.*, *Virga v. Big Apple Const. & Restoration Inc.*, 590 F. Supp. 2d 467, 476 (S.D.N.Y. 2008), *on reconsideration in part* (May 12, 2008); *Mason Tenders Dist. Council v. Envirowaste & Transcontractors, Inc.,* 1999 WL 370667 (S.D.N.Y. June 7, 1999); *Trustees of Bricklayers & Allied Craftworkers Local 5 New York Retirement v. Helmer–Cronin Const., Inc.,* 2005 WL 3789085 (S.D.N.Y. Oct. 24, 2005).  Plaintiffs' numbers are supported by the Audit.  *See* Dkt. No. 15, Ex. E at 1.  Having reviewed Plaintiffs' calculations, the Court concludes that they are correct and finds that Plaintiffs are entitled to the requested amount.

The Court next addresses Plaintiffs' request for attorneys' fees in the amount of $3,225.  Under ERISA, an award of attorneys' fees and costs is mandatory in an action for unpaid contributions. *See LaBarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Bldg. Serv. 32BJ Pension Fund v. 1180 AOA Member LLC*, 2020 WL 70947, at *4 (S.D.N.Y. Jan. 3, 2020) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Broach v. Metro. Exposition Servs., Inc.*, No. 20-CV-0165 (LJL), 2020 WL 3892509, at *8 (S.D.N.Y. July 10, 2020).  The total for the requested attorneys' fees is $4,429.00.  *See* Dkt. No. 15, Ex. 1 at 3.

"Reasonable hourly rates are the rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation, and the relevant community is the district in which the court sits." *Broach*, 2020 WL 3892509, at *9 (citations and internal quotation marks omitted).  Here, Plaintiffs seek $3,225 in attorney's fees, which represents 12.9 hours at $250.00 per hour.  *See* Dkt. No. 15 ¶¶ 21–23.  The attorney, Lauren M. Kugielska, was admitted to practice in this Court in 2014.  *Id.* ¶ 21.  Other courts in this district have found $250 to be a reasonable rate for Ms. Kugielska's services.  *See, e.g.*, *Trustees of Drywall Tapers &*

*Pointers of Greater New York Local Union 1974 Benefit Funds v. Cite C. Corp.*, No. 117-CV-09304 (VSB) (SDA), 2018 WL 8545834, at *3 (S.D.N.Y. Nov. 6, 2018), *report and recommendation adopted sub nom. Trustees of Drywall Tapers & Pointers Local Union No. 1974 Benefit Funds v. Cite C Corp.*, No. 17-CV-9304 (VSB), 2019 WL 1745743 (S.D.N.Y. Apr. 18, 2019) ("The Court finds the $ 250 hourly rate for Ms. Kugielska to be reasonable"); *Drywall Tapers & Pointers of Greater New York Local Union 1974, IUPAT, AFL-CIO v. Visual Acoustics, LLC*, No. 17-CV-5431 (JGK) (KHP), 2018 WL 1596196, at *3 (S.D.N.Y. Mar. 29, 2018) (finding $300 per hour to be a reasonable rate for Ms. Kugielska).  This Court agrees.  Furthermore, the Court concludes that the number of hours recorded by Ms. Kugielska are reasonable.  *See* Dkt. No. 15 ¶ 23.  Thus, Plaintiffs are entitled to $3,225 in attorney's fees.

Finally, the Court also agrees that Plaintiffs are entitled to reimbursement of costs in the amount of $470, which includes the $400 filing fee and $70 for the cost of service of the Summons and Complaint upon Defendant through the Secretary of State.  *See* Dkt. No. 15 ¶ 17 & Ex. F.  To begin with, under ERISA, an award of reasonable costs is mandatory when Plaintiff prevails in an action for delinquent contributions.  29 U.S.C. § 1132(g)(2)(D).  Here, the costs sought by Plaintiff are both properly supported and reasonable.  *See Sullivan as Tr. of Stone Setters Local 84 Pension Fund, Annuity Fund, Vacation Fund, Apprentice Fund, & Indus. Promotion Fund v. Prestige Stone & Pavers Corp.*, No. 16-CV-3348 (AT) (DF), 2020 WL 2859006, at *15 (S.D.N.Y. Feb. 4, 2020), *report and recommendation adopted*, No. 16-CV-3348 (AT) (DCF), 2020 WL 1528117 (S.D.N.Y. Mar. 30, 2020).  For these reasons, the Court agrees that Plaintiffs are entitled to costs in the amount of $470.

**V.     CONCLUSION**

For the reasons stated herein, the motion for default judgment is GRANTED. The Court grants judgment to Plaintiffs as follows: $4,533.78 in principal unpaid fringe benefit contributions for the period stemming from September 23, 2016 through September 30, 2018. $59.50 in interest on that amount through December 31, 2018 and additional pre-judgment interest to be calculated at a rate of 5.25% per year through the entry of judgment; $700 in Audit costs; $3,255 in attorney's fees; and $470 in court costs and disbursements.

By April 15, 2021, Plaintiffs shall submit a supplemental affidavit regarding their request for liquidated damages, including what percentage applies and what the total amount is. At that time, Plaintiffs must also file a proposed final judgment, consistent with this Order. This resolves Dkt. No. 13.

SO ORDERED.

Dated: March 30, 2021
       New York, New York

_____
ALISON J. NATHAN
United States District Judge